Hari Santhanam (*pro hac vice forthcoming*)
HSanthanam@perkinscoie.com
PERKINS COIE LLP
110 North Wacker Drive, Suite 3400
Chicago, Illinois 60606-1511
Telephone: (312) 324-8400
Facsimile:  (312) 324-9400

Evan S. Day, CA Bar No. 283896
EDay@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone: (858) 720-5700
Facsimile:  (858) 720-5799

*Counsel for Kent Imaging Inc. and Adiuvo
Diagnostics PVT. LTD.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENT IMAGING INC., a Canadian corporation, and ADIUVO DIAGNOSTICS PVT. LTD., an Indian corporation, <br><br> Plaintiffs, <br><br> v. <br><br> MOLECULIGHT INC., a Canadian corporation, and UNIVERSITY HEALTH NETWORK, a Canadian corporation, <br><br> Defendants. | Case No.  26-cv-04166 <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NONINFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Kent Imaging Inc. ("Kent Imaging") and Adiuvo Diagnostics Pvt. Ltd. ("Adiuvo") (collectively, "Plaintiffs") bring this Complaint for Declaratory Judgment against Defendants MolecuLight Inc. ("MolecuLight") and University Health Network ("UHN") (collectively, "Defendants") and allege as follows:

## NATURE OF THE ACTION

1.    Plaintiffs Kent Imaging and Adiuvo bring this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 and under the patent laws of the United States, 35 U.S.C.

-1-

§§ 1 *et seq.*, seeking a declaratory judgment that they do not infringe U.S. Patent No. 10,438,356 (the "'356 patent").

2. As alleged in more detail below, Defendants purport that UHN is the owner and assignee of the '356 patent and that MolecuLight has an exclusive license under the patent from UHN. MolecuLight has accused Kent Imaging and Adiuvo of infringing the '356 patent through the SnapshotGLO®—a bacterial-fluorescence device that Adiuvo manufactures, that Kent Imaging imports and sells, and that clinicians throughout the United States use to obtain objective information for effectively assessing and treating patient wounds. In December 2025, MolecuLight filed a complaint against Kent Imaging and Adiuvo at the U.S. International Trade Commission ("ITC"), Inv. No. 337-TA-1483 ("ITC Investigation"), alleging that Kent Imaging and Adiuvo infringe the '356 patent and seeking a limited exclusion order and cease-and-desist orders with respect to the SnapshotGLO® and other medical imaging devices that perform bacterial-fluorescence imaging. While the ITC Investigation is underway, Kent Imaging and Adiuvo bring this action to ensure that the cloud of uncertainty that Defendants have cast upon them will be eliminated once and for all and to ensure that clinicians and patients throughout the United States have access to best-in-class wound-care technology.

3. A true and correct copy of the '356 patent is attached as Exhibit 1.[1]

4. A true and correct copy of the assignment records for the '356 patent from the U.S. Patent and Trademark Office ("USPTO") are attached as Exhibit 2.

5. A true and correct copy of the complaint filed by MolecuLight in the ITC Investigation is attached as Exhibit 3.

## **DIVISIONAL ASSIGNMENT**

6. Pursuant to Civil L.R. 3-2(c), 3-5(b), and General Order No. 44, this is an intellectual property action subject to assignment on a district-wide basis.

---

[1] Each cited exhibit is incorporated by reference in its entirety and is considered part of this Complaint. *See* Fed. R. Civ. P. 10(c).

COMPLAINT FOR DECLARATORY JUDGMENT

## THE PARTIES

7.    Plaintiff Kent Imaging is a Canadian corporation with its principal place of business at 1210 8 Street SW, #300, Calgary, AB T2R IL3, Canada. Kent Imaging designs, manufactures, and markets medical devices that support real-time decision-making in wound care, vascular, and surgical specialties. At issue in this case is Kent Imaging's SnapshotGLO® and other devices that perform bacterial-fluorescence imaging.

8.    Plaintiff Adiuvo is an Indian corporation with its principal place of business at Unit #19, Golden Jubilee Biotech Park for Women Society, Fourth Main Road, Second Cross Street, Old Mahabalipuram Road, Inside SIPCOT Siruseri IT Park, Navalur Post, Tamil Nadu 603103, India. Adiuvo worked with Kent Imaging to develop the SnapshotGLO®, and it manufactures the SnapshotGLO®.

9.    Defendant UHN is a Canadian corporation with its principal place of business at 190 Elizabeth Street, R. Fraser Elliott Building – Room 1S-417, Toronto, ON, M5G 2C4, Canada. Ex. 3 ¶ 14.

10.    Defendants purport that UHN owns the '356 patent. Ex. 3 ¶ 29. The face of the '356 patent and assignment records maintained by the U.S. Patent and Trademark Office ("USPTO") purport that the '356 patent is currently assigned to UHN. Exs. 1–2.

11.    Defendant MolecuLight is a Canadian corporation with its principal place of business at 425 University Avenue, Suite 700, Toronto, ON, M5G 1T6, Canada. Ex. 3 ¶ 9.

12.    MolecuLight purports to have an exclusive license under the '356 patent from UHN. *See* Ex. 3 ¶¶ 29, 43.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over the declaratory judgment claims raised in this action under 28 U.S.C. §§ 2201-2202 and over the questions of federal patent law raised therein under §§ 1331 and 1338(a).

14.    As alleged below, an actual and justiciable controversy exists between the parties, and personal jurisdiction and venue are proper as to each of Defendants.

**A.    An Actual and Justiciable Controversy Exists Between the Parties**

15.    An actual and justiciable controversy exists between Plaintiffs Kent Imaging and Adiuvo and Defendants MolecuLight and UHN regarding whether Plaintiffs infringe the '356 patent.

16.    On or about April 23, 2025, MolecuLight sent Kent Imaging a cease-and-desist letter accusing Kent Imaging's SnapshotGLO® of infringing at least claim 20 of the '356 patent. A true and correct copy of the April 23, 2025 letter is attached as Exhibit 4.

17.    In its cease-and-desist letter, MolecuLight demanded that Kent Imaging confirm that it "will not import, make, use, sell, or offer to sell in the U.S. the SnapshotGLO device." Ex. 4.

18.    In a letter dated April 30, 2025, Kent Imaging responded by denying MolecuLight's infringement allegation and noting MolecuLight's failure to identify evidence to support its allegation. A true and correct copy of the April 30, 2025 letter is attached as Exhibit 5.

19.    On December 29, 2025, MolecuLight filed a complaint with the ITC alleging that Kent Imaging and Adiuvo infringe the '356 patent. Ex. 3.

20.    In its ITC complaint, MolecuLight defines the "Accused Device" or "Accused Product" that purportedly infringe the '356 patent as encompassing "medical imaging devices for the identification, diagnosis, and treatment of wounds," including the SnapshotGLO® and other devices that perform bacterial-fluorescence imaging. Ex. 3 ¶ 6.

21.    MolecuLight alleges that Kent Imaging "imports[] and/or sells within the United States after importation Accused Devices that directly infringe, contributorily infringe, and/or induce the infringement of one or more claims of the Asserted Patent in violation of…35 U.S.C. § 271(a), (b), and/or (c)." Ex. 3 ¶ 21.

22.    With respect to induced infringement under 35 U.S.C. § 271(b), MolecuLight alleges that Kent Imaging has "taken active steps to encourage and facilitate direct infringement by others, such as customers and end users of the Accused Product, with knowledge of that infringement, such as by contracting for the distribution of the Accused Product, by marketing the Accused Product, and by creating and/or distributing user manuals and other marketing materials with instructions for using the Accused Product." Ex. 3 ¶ 9.

-4-

COMPLAINT FOR DECLARATORY JUDGMENT

23. With respect to contributory infringement under 35 U.S.C. § 271(c), MolecuLight alleges that Kent Imaging has "contribut[ed] to the direct infringement of others, such as customers and end users of the Accused Product" by "offer[ing] for sale within the United States[] and/or import[ing] into the United States the Accused Product," which MolecuLight alleges is a "material part of the claimed invention," "especially made or especially adapted for use in an infringing manner," and "not a staple article or commodity suitable for substantial noninfringing use." Ex. 3 ¶ 10.

24. MolecuLight alleges that Kent Imaging "infringes at least claims 20-25, 27, 28, 30, and 31" of the '356 patent. Ex. 3 ¶ 34; *see also id.* ¶¶ 3, 35.

25. MolecuLight seeks a limited exclusion order barring Kent Imaging from importing "Accused Devices," including the SnapshotGLO® and other devices that perform bacterial-fluorescence imaging, and further seeks cease-and-desist orders against Kent Imaging "prohibiting the importation, sale for importation, use, offering for sale, marketing, sale after importation, distribution, licensing, or otherwise transferring within the United States...all Accused Devices." Ex. 3 ¶ 13.

26. Kent Imaging has a direct and substantial interest in a judicial determination of whether it or any of its products, including the SnapshotGLO®, infringe the '356 patent.

27. Kent Imaging denies that it or any of its products, including the SnapshotGLO®, infringes any valid, enforceable, and properly construed claim of the '356 patent.

28. MolecuLight alleges that "Adiuvo sells for importation into the United States, imports, and/or sells within the United States after importation Accused Devices that directly infringe, contributorily infringe, and/or induce the infringement of one or more claims of the Asserted Patent in violation of…35 U.S.C. § 271(a), (b), and/or (c)." See Ex. 3 ¶ 23.

29. With respect to induced infringement under 35 U.S.C. § 271(b), MolecuLight alleges that Adiuvo has "taken active steps to encourage and facilitate direct infringement by others, such as customers and end users of the Accused Product, with knowledge of that infringement, such as by contracting for the distribution of the Accused Product, by marketing the Accused Product,

COMPLAINT FOR DECLARATORY JUDGMENT

and by creating and/or distributing user manuals and other marketing materials with instructions for using the Accused Product." Ex. 3 ¶ 9.

30.    With respect to contributory infringement under 35 U.S.C. § 271(c), MolecuLight alleges that Adiuvo has "contribut[ed] to the direct infringement of others, such as customers and end users of the Accused Product" by "offer[ing] for sale within the United States[] and/or import[ing] into the United States the Accused Product," which MolecuLight alleges is a "material part of the claimed invention," "especially made or especially adapted for use in an infringing manner," and "not a staple article or commodity suitable for substantial noninfringing use." Ex. 3 ¶ 10.

31.    MolecuLight alleges that "Adiuvo manufactures, offers for sale, and/or sells the SnapshotGLO imaging device" and that "Adiuvo infringes at least claim 20-25, 27, 28, 30, and 31 of the Asserted Patent." Ex. 3 ¶ 36; *see also id.* ¶¶ 3, 34.

32.    MolecuLight seeks a limited exclusion order barring Adiuvo from importing Accused Devices, including the SnapshotGLO® and other devices that perform bacterial-fluorescence imaging, and further seeks cease-and-desist orders against Adiuvo "prohibiting the importation, sale for importation, use, offering for sale, marketing, sale after importation, distribution, licensing, or otherwise transferring within the United States...all Accused Devices." Ex. 3 ¶ 13.

33.    Adiuvo has a direct and substantial interest in a judicial determination of whether it or any of its products, including the SnapshotGLO—a product it co-developed and manufactures—infringe the '356 patent.

34.    Adiuvo denies that it or any of its products infringes any valid, enforceable, and properly construed claim of the '356 patent.

35.    UHN is a necessary party to this case because although MolecuLight purports to be an exclusive licensee in name, it lacks all substantial rights to assert the '356 patent on its own. In the ITC Investigation, Plaintiffs moved for summary determination that MolecuLight lacked all substantial rights to assert the '356 patent without UHN. MolecuLight opposed that motion and requested in the alternative that the Administrative Law Judge permit MolecuLight to add UHN as

-6-

COMPLAINT FOR DECLARATORY JUDGMENT

a complainant. While the motion for summary determination is pending, MolecuLight has indicated that UHN will voluntarily join the ITC investigation as a complainant.

36.    Therefore, an actual and justiciable controversy exists between Plaintiffs Kent Imaging and Adiuvo and Defendants MolecuLight and UHN regarding alleged infringement of the '356 patent. In light of MolecuLight's cease-and-desist letter and subsequent filing and prosecution of the ITC Investigation asserting a patent alleged to be owned by UHN, Kent Imaging and Adiuvo are under reasonable apprehension of being sued by Defendants in federal district court.

**B.     This Court Has Personal Jurisdiction Over MolecuLight**

**1.     Specific Personal Jurisdiction Over MolecuLight**

37.    This Court has specific personal jurisdiction over Defendant MolecuLight consistent with the requirements of the Due Process Clause of the United States Constitution and under the laws of the State of California, including California's Long-Arm Statute and the California Code of Civil Procedure § 410.10. MolecuLight has purposefully directed patent-enforcement activities at Kent Imaging's commercial activities throughout the United States, including in California and in this District, and this declaratory judgment action arises out of and relates to those enforcement activities. Thus, MolecuLight has sufficient minimum contacts with this forum such that the exercise of jurisdiction over MolecuLight will not offend traditional notions of fair play and substantial justice.

38.    As noted, MolecuLight sent a cease-and-desist letter to Kent Imaging accusing the SnapshotGLO® of infringing at least claim 20 of the '356 patent and demanding that Kent Imaging confirm in writing that it would not import, make, use, sell, or offer to sell the SnapshotGLO® in the United States. Ex. 4. The cease-and-desist letter was not a mere notice of patent rights; it was an ultimatum demanding that Plaintiffs cease all commercial activity involving the SnapshotGLO® throughout the entire United States, including in California and in this District.

39.    When Plaintiffs did not capitulate to MolecuLight's demands, MolecuLight escalated its enforcement by filing an ITC complaint naming Kent Imaging and Adiuvo as Respondents and accusing each of infringing "at least" claims 20-25, 27, 28, 30, and 31 of the '356 patent. Ex. 3 ¶¶ 3, 34–36.

COMPLAINT FOR DECLARATORY JUDGMENT

40.     In the ITC Investigation, MolecuLight seeks a limited exclusion order excluding from entry into the United States any "Accused Devices," including the SnapshotGLO® and other devices that perform bacterial-fluorescence imaging, and further seeks cease-and-desist orders against Kent Imaging and Adiuvo "prohibiting the importation, sale for importation, use, offering for sale, marketing, sale after importation, distribution, licensing, or otherwise transferring within the United States...all Accused Devices." Ex. 3 ¶ 13.

41.     These remedies, if granted, would prohibit Kent Imaging from importing and selling the SnapshotGLO® or other bacterial-fluorescence imaging devices anywhere in the United States, including to customers in California and in this District. These remedies would also potentially restrict Kent Imaging's ability to repair, replace, or provide services in connection with such deployed units.

42.     The SnapshotGLO® was launched in 2025, and Kent Imaging has sold the SnapshotGLO® in California.

43.     MolecuLight's enforcement activities—including its cease-and-desist letter, its ITC complaint, and its requested nationwide exclusion and cease-and-desist orders—are specifically aimed at cutting off the importation and sale of the SnapshotGLO® and other bacterial-fluorescence imaging devices to customers throughout the United States, including in California and this District.

44.     This course of conduct constitutes purposeful direction of enforcement activities at Plaintiffs Kent Imaging and Adiuvo and at this forum, and Plaintiffs' declaratory judgment claim arises out of and relates to those enforcement activities.

45.     Exercising jurisdiction over MolecuLight is thus consistent with the United States Constitution and laws.

**2.      Personal Jurisdiction Over MolecuLight Under Rule 4(k)(2)**

46.     In the alternative, this Court has personal jurisdiction over Defendant MolecuLight under Federal Rule of Civil Procedure 4(k)(2).

47.     Plaintiffs Kent Imaging and Adiuvo bring this action under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

-8-

COMPLAINT FOR DECLARATORY JUDGMENT

48. MolecuLight is a foreign, Canadian corporation with its principal place of business in Toronto, Ontario.

49. MolecuLight is not a resident of any U.S. state.

50. MolecuLight does not maintain offices, employees, or operations sufficient to subject it to personal jurisdiction in any U.S. state.

51. To the extent that MolecuLight is not subject to personal jurisdiction in courts of general jurisdiction in California, it is not subject to personal jurisdiction in any state's courts of general jurisdiction.

52. Exercise of personal jurisdiction over MolecuLight is consistent with due process, as MolecuLight has had sufficient minimum contacts with the United States through its attempts to enforce the '356 patent such that notions of fair play and substantial justice would not be offended.

53. MolecuLight has purposefully directed its activities related to the '356 patent toward the United States.

54. MolecuLight purports to hold an exclusive license under the '356 patent and other U.S. patents owned by UHN. *See* Ex. 3 ¶¶ 19, 29, 43.

55. MolecuLight has sought and obtained FDA clearance for its devices, including its MolecuLight *i:X* and MolecuLight DX devices, which it alleges compete with Kent Imaging's accused SnapshotGLO® device and provide a domestic industry within the United States. Ex. 3 ¶¶ 12, 16–17.

56. MolecuLight has a wholly owned U.S. subsidiary by which MolecuLight is able to introduce its products into the U.S. market.

57. MolecuLight has affirmatively invoked the jurisdiction of a United States agency (the ITC) by filing a complaint there and seeking exclusion of Plaintiffs' products from the United States along with cease-and-desist orders.

58. For at least these reasons, to the extent MolecuLight is not otherwise subject to specific personal jurisdiction in this Court, exercising personal jurisdiction over MolecuLight under Federal Rule of Civil Procedure 4(k)(2) is proper.

COMPLAINT FOR DECLARATORY JUDGMENT

**C.    This Court Has Personal Jurisdiction Over UHN Under Rule 4(k)(2)**

59.    This Court has personal jurisdiction over Defendant UHN under Federal Rule of Civil Procedure 4(k)(2).

60.    Plaintiffs Kent Imaging and Adiuvo bring this action under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

61.    UHN is a foreign, Canadian corporation with its principal place of business in Toronto, Ontario.

62.    UHN is not a resident of any U.S. state.

63.    UHN does not maintain offices, employees, or operations sufficient to subject it to personal jurisdiction in any U.S. state.

64.    To the extent that UHN is not subject to personal jurisdiction in courts of general jurisdiction in California, it is not subject to personal jurisdiction in any state's courts of general jurisdiction.

65.    Exercise of jurisdiction over UHN is consistent with due process as UHN has had sufficient minimum contacts with the United States such that notions of fair play and substantial justice would not be offended.

66.    UHN has purposely directed its activities toward the United States: UHN is the assignee of the '356 patent and, on information and belief, other U.S. patents relating to bacterial-fluorescence imaging technology, which it has actively filed, prosecuted, and maintained at USPTO, either alone or in conjunction with MolecuLight. On information and belief, UHN's patent portfolio also includes PCT Application No. PCT/CA2009/000680, which is incorporated by reference in the '356 patent and published as PCT Publication No. WO 2009/140757.

67.    UHN has purportedly granted MolecuLight an exclusive royalty-bearing license to develop, commercialize, and exploit the patented technology, including at least a partial right to enforce the '356 patent, in the United States. Ex. 3 ¶¶ 29, 43.

68.    On information and belief, UHN receives royalties and other benefits from the commercial exploitation and enforcement of the '356 patent in the United States.

69. Further still, the '356 patent names Ralph DaCosta as the sole inventor. Ex. 1. DaCosta was a research scientist at UHN at the time of the alleged invention. On information and belief, DaCosta is still employed by UHN today and also serves as MolecuLight's Chief Scientific Officer. A true and correct copy of the LinkedIn profile reflecting DaCosta's employment history is attached as Exhibit 6.

70. UHN has thus purposefully availed itself of the benefits and protections of the U.S. patent system.

71. For at least these reasons, exercising personal jurisdiction over UHN under Federal Rule of Civil Procedure 4(k)(2) is proper.

**D.      Venue**

72. Venue is proper in this District under 28 U.S.C. § 1391(c)(3) because Defendants are foreign companies that are not resident in the United States and as such may be sued in any judicial district in the United States.

73. To the extent venue in this District is not proper under 28 U.S.C. § 1391(c)(3), it is proper under § 1391(b)(3) because this Court has personal jurisdiction over each of Defendants as set forth above and there is no district in which this action may otherwise be brought.

**FACTUAL BACKGROUND**

**A.      The '356 Patent**

74. The '356 patent, entitled "Collection and Analysis of Data for Diagnostic Purposes," issued on October 8, 2019. Ex. 1.

75. The '356 patent generally relates to systems and methods for determining bacterial load in a wound target using fluorescence-based imaging. Ex. 1 at abstract, claim 20.

76. According to the '356 patent, the disclosed device uses one or more excitation light sources to illuminate a wound target, causing bacteria and tissue components present in the wound to autofluoresce. Ex. 1 at 10:64–65, 11:84, 13:46–50. The device includes a detector such as a digital camera that detects the resulting fluorescence. *Id.* at 10:65–11:3, 11:14–21. And a processor analyzes the detected signal data by comparing the intensities of individual pixels to a threshold and then summing pixels above the threshold to calculate a bacterial load. *Id.* at 21:31–22:10.

-11-

COMPLAINT FOR DECLARATORY JUDGMENT

77. The '356 patent incorporates by reference the disclosure of PCT Application No. PCT/CA2009/000680, published as PCT Publication No. WO 2009/140757, which is from a related patent family also assigned to UHN and directed to the same fluorescence-based wound imaging technology. Ex. 1 at 7:57–8:3.

78. The '356 patent includes three independent claims: claims 1, 20, and 33. All other claims of the '356 patent depend directly or indirectly from one of these independent claims.

79. In the ITC Investigation, MolecuLight asserts that Kent Imaging and Adiuvo infringe at least independent claim 20 and dependent claims 21-25, 27, 28, 30, and 31 of the '356 patent, all of which depend either directly or indirectly from claim 20.

80. Independent claim 20 recites:

> 20. A system for acquiring data regarding a wound in tissue, comprising:
>
> at least one excitation light source configured to directly illuminate a target with a uniform field of excitation light and cause bacteria present on and/or in the target to fluoresce;
>
> an optical sensor configured to detect signals responsive to illumination of bacteria on and/or in the target with excitation light, each signal indicative of at least one of endogenous fluorescence, exogenous fluorescence, absorbance, and reflectance in the illuminated target;
>
> a processor configured to receive the detected signals, to identify pixels corresponding to bacterial fluorescence emitted from the target and having an intensity above a predetermined threshold, to calculate bacterial load of the target based on the identified pixels, and to output data regarding the bacterial load of the target; and
>
> a display for displaying the output data regarding the illuminated target output by the processor.

81. Independent claim 20 recites, and all claims depending from it require, (a) "at least one excitation light source configured to directly illuminate a target with a uniform field of excitation light" and (b) "a processor configured to … calculate bacterial load of [a] target." Ex. 1 at claim 20.

82. The other independent claims of the '356 patent (claims 1 and 33) recite substantially similar "uniform field of excitation light" and "bacterial load" limitations. For example, claims 1 and 33 recite, and all claims depending from them require, (a) "directly

-12-

COMPLAINT FOR DECLARATORY JUDGMENT

illuminating at least a portion of a target with a uniform field of excitation light emitted by at least one light source," and (b) "determining a bacterial load of the illuminated portion of the target." Ex. 1 at claims 1, 33.

### B. Factual Bases for Noninfringement

83. Plaintiffs Kent Imaging and Adiuvo do not infringe any valid, enforceable, and properly construed claim of the '356 patent.

84. Without limiting the full scope of Plaintiffs' noninfringement positions, Kent Imaging and Adiuvo identify the following bases for noninfringement of the SnapshotGLO® with respect to independent claim 20. Because the other independent claims of the '356 patent also contain limitations nearly identical to those discussed below, these bases for noninfringement apply to all claims of the '356 patent.

85. Kent Imaging and Adiuvo reserve the right to assert noninfringement of all claims of the '356 patent, to assert noninfringement of other products that Defendants accuse of infringing the '356 patent, and to assert additional bases for noninfringement as they are developed through discovery and expert analysis.

### 1. The SnapshotGLO® Product

86. The SnapshotGLO® is a noninvasive, point-of-care wound-imaging device that enables clinicians to detect and visualize bacteria present in wounds that are not otherwise visible to the naked eye. A true and correct copy of the SnapshotGLO® User Guide (Model KB100, revised April 17, 2026) is attached as Exhibit 7.

87. The SnapshotGLO® is FDA 510(k) cleared and classified as an autofluorescence detection device (21 CFR 878.4550, Class II). A true and correct copy of the SnapshotGLO® 510(k) Summary is attached as Exhibit 8.

88. Kent Imaging launched the SnapshotGLO® in or around September 2025. A true and correct copy of Kent Imaging's press release announcing the launch of the SnapshotGLO® is attached as Exhibit 9.

89. The SnapshotGLO® comprises two ultraviolet (395 nm) LEDs that illuminate a wound with ultraviolet light that causes bacteria present in the wound to autofluoresce. Ex. 8 at 2.

COMPLAINT FOR DECLARATORY JUDGMENT

90.     During use, the SnapshotGLO® operates much like a camera to capture images of a wound with a single click. Ex. 7 at 12; Ex. 8 at 2. The device processes the captured images to display (1) a high-resolution, color clinical image of the wound alongside (2) a fluorescence image to visually identify bacterial presence, with the option to highlight using an overlay. Ex. 7 at 22; Ex. 8 at 2.

91.     The SnapshotGLO® is designed to highlight portions of an image that correlate with elevated levels of bacterial bioburden in wounds, specifically above $10^4$ colony forming units per gram ("CFU/g"). *See* Ex. 7 at 12.

### 2.     The SnapshotGLO® Does Not Provide a "Uniform Field of Excitation Light"

92.     Independent claim 20 requires a system having "at least one excitation light source configured to directly illuminate a target with a uniform field of excitation light."

93.     Independent claims 1 and 33 recite method claims that similarly require "directly illuminating at least a portion of a target with a uniform field of excitation light emitted by at least one light source."

94.     The SnapshotGLO® comprises two ultraviolet (395 nm) LEDs. These LEDs, however, are not configured to illuminate a target with a "uniform field of excitation light" as required by the '356 patent's independent claims.

95.     The SnapshotGLO® User Guide expressly states that "[t]he excitation source intensity is not uniform across the imaging field and the image pixels farther from the center of the image show a lower fluorescence signal than its center signal value." *See* Ex. 7 at 3.

96.     The intensity of the excitation light provided by the SnapshotGLO® varies across the imaging field, with pixels farther from the center exhibiting lower fluorescence signals. *See* Ex. 7 at 3.

97.     The SnapshotGLO® User Guide instructs users that, "[f]or small wounds, ensure it is within the reticle, and for larger wounds, ensure critical areas of the wound are captured through multiple imaging sessions" precisely because of this non-uniformity. *Id.*

-14-

COMPLAINT FOR DECLARATORY JUDGMENT

98.     Therefore, the SnapshotGLO® does not meet the "uniform field of excitation light" limitation of the independent claims of the '356 patent, including claim 20, either literally or under the doctrine of equivalents.

### 3. The SnapshotGLO® Does Not "Calculate Bacterial Load" or "Output Data Regarding the Bacterial Load"

99.     Independent claim 20 further requires "a processor configured to receive the detected signals, to identify pixels corresponding to bacterial fluorescence emitted from the target and having an intensity above a predetermined threshold, to calculate bacterial load of the target based on the identified pixels, and to output data regarding the bacterial load of the target."

100.     Independent claims 1 and 33 recite method claims with similar "bacterial load" limitations. Claim 1 recites "determining a bacterial load of the illuminated portion of the target by summing the identified pixels, wherein the bacterial load is the measurable bacteria in the target." Independent claim 33 recites "determining a bacterial load of the illuminated portion of the target based on the number of pixels identified[] and tracking changes in bacterial load of the target over time."

101.     The SnapshotGLO® does not calculate or determine bacterial load, nor does it display an output corresponding to a calculated or determined bacterial load as required by the '356 patent's independent claims.

102.     The SnapshotGLO® User Guide expressly states that "[t]he SnapshotGLO images are not quantitative and may not represent the absolute bacterial levels of the wound but do allow relative comparison within regions in a single image." *See* Ex. 7 at 3.

103.     The SnapshotGLO® captures bacterial-fluorescence images and presents those images to clinicians to assist in visualization, but its image processing does not perform any specific calculation or determination of bacterial load. *See generally* Ex. 7.

104.     The SnapshotGLO® does not purport to quantify any bacterial-load values. *See generally* Ex. 7.

105.     The SnapshotGLO® does not meet the "bacterial load" limitation of the independent claims of the '356 patent, including claim 20, either literally or under the doctrine of equivalents.

COMPLAINT FOR DECLARATORY JUDGMENT

#### 4.    Noninfringement of All Claims

106.    Because independent claim 20 is not infringed for at least the reasons set forth above, none of the claims that depend from claim 20—including claims 21–25, 27, 28, 30, and 31, which MolecuLight asserted in its complaint in the ITC Investigation—are infringed.

107.    Because claims 1 and 33 recite the same or similar "uniform field of excitation light" and "bacterial load" limitations, the SnapshotGLO® does not infringe any independent claim of the '356 patent, and by extension, any claim that depends from any independent claim of the '356 patent, either directly or indirectly. In other words, the SnapshotGLO® does not infringe any claim of the '356 patent.

## COUNT I

### (Declaratory Judgment of Noninfringement of U.S. Patent No. 10,438,356)

108.    Plaintiffs incorporate and reallege the allegations of Paragraphs 1 through 107 as though fully set forth herein.

109.    As set forth above, an actual and justiciable controversy exists between Plaintiffs and Defendants regarding whether Plaintiffs infringe the claims of the '356 patent.

110.    Defendants have accused and initiated enforcement proceedings at the ITC against Plaintiffs, alleging that Plaintiffs infringe one or more claims of the '356 patent.

111.    Plaintiffs deny that they infringe any valid, enforceable, and properly construed claim of the '356 patent, either literally or under the doctrine of equivalents.

112.    Among other things, and without limitation, the SnapshotGLO® does not (a) provide a uniform field of excitation light and (b) does not calculate or determine a bacterial load or output data regarding such calculated or determined bacterial load, as required by the independent claims of the '356 patent, including claim 20.

113.    Because no independent claim of the '356 patent is infringed, no dependent claim is infringed.

114.    Plaintiffs are therefore entitled to a judicial declaration that they do not infringe any valid, enforceable, and properly construed claim of the '356 patent.

**JURY DEMAND**

115.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs Kent Imaging and Adiuvo hereby demand a jury trial on all issues and claims so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Kent Imaging and Adiuvo respectfully request the following relief:

A.    A judgment declaring that Plaintiffs have not infringed and do not infringe, directly or indirectly, literally or by equivalents, any valid, enforceable, and properly construed claim of the '356 patent;

B.    An order permanently enjoining and restraining Defendants, their officers, agents, servants, employees, and attorneys, and all others acting for, on behalf of, or in active concert with any of them, from stating, implying, or suggesting that Plaintiffs have infringed, or do infringe, any claim of the '356 patent;

C.    An order finding that this is an exceptional case and awarding Plaintiffs their costs, expenses, disbursements, and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law; and

D.    Such other relief, in law or in equity, to which Plaintiffs may show themselves to be entitled or as this Court deems just and proper.

-17-

COMPLAINT FOR DECLARATORY JUDGMENT

Dated: May 6, 2026                              **PERKINS COIE LLP**


By: */s/ Evan Day*

Hari Santhanam (*pro hac vice forthcoming*)
HSanthanam@perkinscoie.com
PERKINS COIE LLP
110 North Wacker Drive, Suite 3400
Chicago, Illinois 60606-1511
Telephone: (312) 324-8400
Facsimile:  (312) 324-9400

Evan S. Day, Bar No. 283896
EDay@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone: (858) 720-5700
Facsimile:  (858) 720-5799

*Counsel for Kent Imaging Inc. and Adiuvo Diagnostics PVT. LTD.*

-18-